## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JOEL CARTER,

       *Plaintiff*,                CASE NO. 2:14-CV-13234-PJD-PTM

*v.*

KENDALL BYRD,           DISTRICT JUDGE PATRICK J. DUGGAN
RANDALL HAAS,         MAGISTRATE JUDGE PATRICIA T. MORRIS
STAN WHITE

       *Defendants*.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Doc. 12)

## I.    RECOMMENDATION

For the reasons presented below, **IT IS RECOMMENDED** that the Motion for Summary Judgment (Doc. 12) be **GRANTED** and that Plaintiff's claims against Defendant Haas and unserved Defendants Byrd and White be dismissed.

## II.    REPORT

### A.    Introduction and Background

Plaintiff Joel Carter filed this *pro se* federal civil rights action under 42 U.S.C. § 1983 on August 20, 2014. (Doc. 1.) Plaintiff was incarcerated by the Michigan Department of Corrections ("MDOC") at the Macomb Correctional Facility ("MRF") when the alleged First Amendment retaliation took place. (*Id.* at 2.) Plaintiff claims that all defendants were at all relevant times employed by MDOC at MRF. (Doc. 1 at 2.) As

of May 5, 2015, only Defendant Haas has been properly served. For all times relevant to this lawsuit, Defendant Haas was a deputy warden at MRF. (Doc. 12 at ID 60.)

On December 8, 2014, Defendant Haas filed a Motion for Summary Judgment. (Doc. 12.) On March 12, 2015, Plaintiff filed a Response to Defendant Haas's Motion for Summary Judgment. (Doc. 26.) Accordingly, pursuant to E.D. Mich. LR 7.1(f)(1), the motion is ready for report and recommendation without oral argument.

According to Plaintiff, in March 2012 he lent his "beard trimmers to prisoner Floyd Jennings." (Doc. 1 ¶ 10.) The trimmers were later confiscated "and given to Defendant Byrd for return to their rightful owner." (*Id.*) Plaintiff asserts that there was no written "misconduct report or . . . 'Notice of Intent'" as required by MDOC policy. (*Id.*) Plaintiff states that on April 23, 2012 he went to the officer's station and asked Defendant Byrd if he could have his beard trimmers back. (Doc. 1 ¶ 12.) Byrd allegedly said "their [sic] mine now, you['re] not getting them back[;] now what." (*Id.*) Plaintiff claims that he told Defendant Byrd that removing the property without a contraband removal notice was a violation of policy and that he would be "writing the Warden, Deputy Warden, and Assistant Deputy Warden, . . . your about to see how outcold I with a ink pen or typewriter. I want my property." (*Id.* [sic throughout].)

Plaintiff alleges that five minutes later he was issued "a Major Misconduct Report for '[t]hreatening [b]ehavior,'" and was taken to temporary segregation. (*Id.* ¶ 13.) Plaintiff states that he was found not guilty of threatening behavior at the misconduct hearing on May 2, 2012, but that Defendant Haas refused to release him from segregation. (*Id.* ¶ 17.) There was also a security reclassification hearing that day where

Plaintiff asked why he was still in segregation and Defendant Haas allegedly replied, "I believe you threatened [Byrd], so I'm transferring you. You'll remain in segregation until you transfer." (*Id.* ¶ 18.) According to Plaintiff, Defendant Haas documented on a "'Security Reclassification Notice' that the reason he was ordering Plaintiff's transfer to an 'Alternative Level IV,' [was] because of" the threatening behavior. (*Id.*)

In his affidavit, Defendant denies saying that the segregation and transfer were because of the threats to Byrd; instead he claims that the transfer was "recommended by SCC" after Plaintiff was "found guilty of sexual exposure misconduct on April 29, 2012." (Aff. of Randall Haas, Doc. 12-2 at ID 73.)

Plaintiff states that on May 10, 2012 he was "transferred to the Michigan Reformatory," that Defendant Byrd "eventually destroyed [his] property," and that Defendants Byrd and Haas "together caused [him] to be subjected to seventeen days of temporary segregation, and a retaliatory transfer for engaging in protected conduct." (*Id.* ¶ 21.) Plaintiff also states, "On May 8, 2012, Defendant White intentionally construed Plaintiff's [g]rievance for the sole purpose to reject [it] as 'nongrievable' under MDOC [policy]." (*Id.* ¶ 23.)

### B.    Standard of Review

A motion for summary judgment will be granted under Rule 56 of the Federal Rules of Civil Procedure when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587

3

(1986). The moving party has "'the initial burden of showing the absence of a genuine issue of material fact' as to an essential element of the non-movant's case." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Celotex Corp. v Catrett*, 477 U.S. 317, 323 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 325.

The non-moving party cannot rest merely on the pleadings in response to a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the non-moving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely on the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992).

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting

4

*Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### C.    Governing Law and Analysis

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). The defense of qualified immunity generally shields government officials acting within their discretion from liability for civil damages as long as their conduct does not violate "clearly established constitutional rights" of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once the defense of qualified immunity is raised, the burden falls on the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). When a defendant moves for summary judgment on the basis of qualified immunity, the analysis involves three inquiries.

> (i) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred"; (ii) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known"; and (iii) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights."

*Radvansky v City of Olmsted*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).[1] Courts are no longer required to address these inquiries sequentially; instead a court may use its sound discretion to determine which of the prongs of the qualified immunity analysis should be considered first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Supreme Court has clarified the interplay between qualified immunity and the summary judgment standards found in Rule 56(c) of the Federal Rules of Civil Procedure:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations omitted).

I suggest that Defendant is entitled to qualified immunity because even when the alleged facts are viewed in light most favorable to Plaintiff, they do not show that his clearly established constitutional right was violated. A First Amendment retaliation claim

---

[1] In *Saucier v. Katz*, the Supreme Court identified only two of these prongs. 533 U.S. 194, 201 (2001). The second prong, however, integrated the "objective legal reasonableness of an official's conduct, as measured by reference to clearly established law." *Id.* In *Dickerson v. McClellan*, the Sixth Circuit made the "objectively unreasonable" requirement a distinct third prong.

consists of the following elements: (1) the plaintiff was engaged in constitutionally-protected conduct; (2) the defendant's adverse action would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) a causal connection between elements one and two, i.e., "the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) (en banc)). For the first element, a plaintiff must show engagement in protected conduct. *Id.* For the second element, in order to be cognizable, a retaliation claim must also meet the "sensible standard," that is, a plaintiff must show how an "official's acts 'would chill or silence a 'person of ordinary firmness' from future First Amendment activities." *Id.* at 397 (quoting *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996)). The third element–a causal connection between the protected conduct and the adverse action–is evaluated with a burden-shifting technique. *Id.* at 399. The burden initially falls on the plaintiff, who must show that the protected conduct motivated the harm. *Id.* Then the burden of production shifts to the defendant, who must show that the same action would have been taken even if the plaintiff had not engaged in the protected conduct. *Id.*

I suggest that even if Plaintiff were able to show the first two prongs, he cannot establish First Amendment retaliation because he cannot show that the alleged adverse action was causally connected to the protected conduct. Plaintiff claims that he was transferred after being found not guilty of threatening behavior. (Doc. 1 at 18.) However, Defendant claims that Plaintiff was kept in segregation and eventually transferred to "an alternative level IV after being found guilty of sexual exposure misconduct on April 29, 2012." (Doc. 12 at ID 61.) In his affidavit, Defendant states, "The sole reason for

Plaintiff's lateral transfer was due to his sexual exposure misconduct. This transfer would have occurred regardless of Plaintiff's First Amendment activities." (Aff. of Randall Haas, Doc. 12-2 at ID 74.))

In his Response, Plaintiff reiterates his allegations that Defendant told him his transfer was because of his alleged threatening behavior, of which he was found not guilty. (Doc. 26 at ID 148.) Plaintiff attached a security reclassification notice, showing that Plaintiff was found guilty of "threatening behavior."[2] (Doc. 26 at ID 173.) However, Defendant attached the transfer order, which shows that Plaintiff was transferred on May 10, 2012 because of sexual misconduct/exposure on April 29, 2012. (Doc. 12-2 at ID 75.) Plaintiff does not deny that he was found guilty of sexual exposure misconduct.

In *Jackson v. Madery*, the Sixth Circuit held, "A finding of guilt based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'" 158 F. App'x 656, 662 (6th Cir. 2005) (citing *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)). Here, Plaintiff was found guilty of sexual exposure, which was the stated reason for the transfer. Therefore, I suggest that he fails to show the third element of his retaliation claim.

### D.    Unserved Defendants Byrd and White

As of May 5, 2015 Defendants Byrd and White have not been served. Nevertheless, under the circumstances of this case, I suggest that the claims against them

---

[2] There does appear to be a disparity between the forms because one indicates Plaintiff was found guilty of the threatening behavior and another indicates he was found not guilty. Also, the security reclassification notice does not say anything about indecent exposure. (Doc. 26 at ID 173.) I suggest however that this is harmless because the actual transfer order shows that Plaintiff was transferred because of "indecent exposure."

should be dismissed on the same grounds as Movant Haas. "'Summary judgment may be properly entered in favor of unserved defendants where (1) the controlling issues would be the same as to the unserved defendants, (2) those issues have been briefed, and (3) [p]laintiff has been provided an opportunity to address the controlling issues.'" *Lindensmith v. Melissa Jerome*, No. 10-13530, 2011 WL 6217339 at *5 (E.D. Mich. Oct. 27, 2011) (quoting *Moore v. Thomas*, 653 F.Supp.2d 984, 1003 (N.D. Cal. 2009). In *Lindensmith*, a court in this District found that "it would be futile and an uneconomical use of judicial resources to conduct further proceedings against the non-moving and unserved Defendants." *Id.*; *see also Buckley v. Fitzsimmons*, 20 F.3d 789, 793 (7th Cir. 1994) ("No principle forbids a court to notice that a defense exists, is bound to be raised, and is certain to succeed when raised."); *Blake v. McCormick*, No. 5:06-cv-273, 2007 WL 1671732 at *5 (E.D. Tex. June 8, 2007) (finding that meritorious affirmative defenses asserted by defendants were "equally applicable to the claims against the unresponsive and unserved defendants" and formed the basis to dismiss the unserved defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); *Day v. Office of Cook County Sheriff*, No. 2000 C 2529, 2001 WL 561362 at *3 (N.D. Ill. May 21, 2001) (finding that defendant's meritorious defense of qualified immunity applied to other unserved defendants who could have raised the same defense).

### E.    Conclusion

For the above reasons, I RECOMMEND that Defendant's Motion for Summary Judgment be GRANTED. I also RECOMMEND that Plaintiff's claims against Defendants Byrd and White be dismissed.

## III.   <u>REVIEW</u>

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection

10

No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections

are without merit, it may rule without awaiting the response.


Date: May 7, 2015                          S/ PATRICIA T. MORRIS
                                           Patricia T. Morris
                                           United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date
through the Court's CM/ECF system which delivers a copy to all counsel of record.  A
copy was also sent via First Class mail to Joel Carter #410324 at Marquette Branch
Prison, 1960 U.S. Hwy 41 South, Marquette, MI 49855.

Date: May 7, 2015                          By s/Kristen Krawczyk
                                           Case Manager to Magistrate Judge Morris